UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDWARD AARON LOWERY, JR.                CIVIL ACTION

VERSUS                                  NO. 12-0830

BURL CAIN, WARDEN                       SECTION: "N"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. On June 6, 2012, the case was reassigned to this Court. Record Doc. No. 11. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. §2254(e)(2). For the following reasons, IT IS HEREBY RECOMMENDED that the instant petition be **DISMISSED WITH PREJUDICE.**

## I.  PROCEDURAL HISTORY[1]

Petitioner, Edward Aaron Lowery, Jr., is a state prisoner currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Lowery was convicted on September 9, 2003, in the Twenty-Second Judicial District Court for the Parish of St. Tammany, of two counts of simple burglary. The State filed a

_____

[1]A portion of the procedural history was taken from the Louisiana First Circuit Court of Appeal's opinion, State v. Lowery, 890 So.2d 711 (La. App. 1 Cir. 12/17/04).

multiple offender bill of information against Lowery and he was adjudicated to be a fourth felony offender.   Pursuant to his multiple offender status, Lowery was sentenced on January 5, 2004. As to count one, Lowery was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence and as to count two, Lowery was sentenced to twelve years imprisonment at hard labor, to be served concurrently with the enhanced sentence imposed as to count one.

Lowery appealed his convictions and sentences, raising the following six claims:   1) the trial court erred in denying his motion to suppress; 2) the trial court erred in finding petitioner to be a fourth felony offender because two of the predicate convictions arose from guilty pleas taken on the same day; 3) he received an excessive sentence; 4) the trial court failed to advise him of the time for seeking post-conviction relief; 5) the trial court erred in adjudicating him to be a fourth felony offender as one of the prior convictions was punishable by an imprisonment term of less than ten years; 6) the trial court erred by considering fingerprints contained in an arrest registry for purposes of adjudicating him to be a fourth felony offender; and, 7) the trial court erred in imposing two sentences.   On December 17, 2004, the Louisiana First Circuit Court of Appeal affirmed Lowery's convictions and sentences, but remanded the matter with instructions that the trial court advise Lowery of the applicable time period for seeking post-conviction relief.   State v. Lowery,

890 So.2d 711 (La. App. 1 Cir. 12/17/04).  On May 13, 2005, the Louisiana Supreme Court denied Lowery's writ application.  <u>State v. Lowery</u>, 902 So.2d 1018 (La. 2005).  Thereafter, Lowery sought post-conviction relief, filing numerous writ applications in the state court system.  His efforts in this regard culminated on April 13, 2012, when the Louisiana Supreme Court denied his writ application.  <u>State ex rel. Lowery v. State</u>, 85 So.3d 1236 (La. 2012).

On June 10, 2010, while his state post-conviction proceedings were pending, Lowery filed his first federal habeas corpus application.  On August 11, 2011, United States Magistrate Judge Louis Moore, Jr., issued a report and recommendation recommending that Lowery's habeas petition be dismissed without prejudice for failure to exhaust all of his claims.  <u>Lowery v. Cain</u>, 2011 WL 3924971, Civil Action No. 2010-3908 (E.D. La. 08/11/11).[2]  On September 2, 2011, the district judge adopted the magistrate judge's report and recommendation and issued Judgment dismissing Lowery's habeas petition without prejudice.[3]

On September 21, 2011, Lowery filed a second federal habeas corpus petition.  On February 16, 2012, Magistrate Judge Moore

---

[2]In his report and recommendation, the magistrate judge lists the 16 claims set forth in Lowery's habeas petition and specifies which ones have not been exhausted.  <u>Lowery</u>, 2011 WL at *2-3.  <u>See Whitehead v. Johnson</u>, 157 F.3d 384, 387 (5th Cir. 1998) ("A fundamental prerequisite to federal habeas relief under §2254 is exhaustion of all claims in state court prior to requesting federal collateral relief.") (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 519-520 (1982)).

[3]Civil Action No. 10-3908, rec. doc. no. 28.

issued a second report and recommendation recommending that
Lowery's second habeas petition be denied without prejudice for
failure to exhaust all of his claims. Lowery v. Cain, 2012 WL
777482, Civil Action No. 2011-2710 (E.D. La. 2/16/12).[4] On March
5, 2012, the district judge adopted the magistrate judge's report
and recommendation and issued Judgment dismissing Lowery's habeas
petition without prejudice.[5]

II. FEDERAL HABEAS PETITION

On March 21, 2012, Lowery filed the instant federal habeas
corpus petition, asserting the following grounds for relief: (1) He
was subjected to an illegal search and seizure. (2) He received
ineffective assistance of counsel based upon the following: (a)
counsel failed to conduct an adequate pre-trial investigation; (b)
counsel failed to utilize a witness's inconsistent statements on
cross-examination; (c) counsel failed to allow him to take the
stand; (d) counsel failed to challenge a 1987 simple burglary
conviction used to enhance his sentence. (3) The trial court erred
by: (a) improperly using a possession of cocaine conviction
carrying a sentence of less than ten years to adjudicate him to be

---

[4]In his second report and recommendation, the magistrate judge
lists the 13 claims set forth in Lowery's second habeas petition
and specifies which ones have not been exhausted. Lowery, 2012 WL
at *3-5.

[5]Civil Action No. 11-2710, rec. doc. no. 16.

a fourth felony offender; (b) improperly counting his May 21, 1997 convictions as two separate convictions for the purpose of adjudicating him to be a fourth felony offender.  4) His May 21, 1997 guilty pleas were "unknowingly made, unintelligently made, and unfreely made."[6]   The State filed a response acknowledging that Lowery <u>has exhausted</u> the instant claims but claiming that his petition is untimely.[7]   Lowery filed a traverse to the State's response.[8]

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. §2254.  The AEDPA went into effect on April 24, 1996[9] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Lowery's petition,

---

[6]Rec. Doc. No. 3, p. 13.

[7]Rec. Doc. No. 10, pp. 5 and 7.

[8]Rec. Doc. No. 12.

[9]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

which was filed by the clerk of this court on May 3, 2012, and which is deemed filed on March 21, 2012.[10]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[10]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Lowery's petition was filed by the clerk of this court on May 3, 2012, when the filing fee was received. Lowery's signature on his petition was dated March 21, 2012. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing. The fact that he did not pay the filing fee on March 21, 2012, does not alter the application of the federal mailbox rule to his pro se petition. See Cousin, 310 F.3d at 843 (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The State concedes and the record reflects that Lowery has exhausted the claims set forth in the instant petition. However, the State asserts the defense that this petition is untimely.[11]

Under the AEDPA, a petitioner is required to bring his Section 2254 petition within one year of the date his conviction became final by the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. §2244(d)(1). However, the one-year prescriptive period is tolled during the time a properly filed application for state post-conviction or other collateral relief is pending.  28 U.S.C. §2244 (d)(2).

The State, via its calculation supporting its untimeliness argument, fails to consider the almost two-year period, from June 10, 2010 to September 2, 2011, and from September 21, 2011 to March 5, 2012, during which Lowery's federal habeas corpus petitions were pending.  <u>Duncan v. Walker</u>, 533 U.S. 167, 181 (2001) ("§2244(d)(2) does not toll the limitation period during the pendency of a federal habeas petition").  However, Section 2244(d)(2) is only one of two ways in which the AEDPA statute of limitations may be tolled.  The United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may also be equitably tolled, but only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.   <u>Pace v.</u>

---

[11]Rec. Doc. 10, p. 5.

DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

The Court finds that the lengthy time period of almost two years during which Lowery's petitions were pending in federal court, a delay in no way attributable to Lowery, warrants equitable tolling. Thus, the Court finds the instant action timely. See Pedelahore v. Tanner, 2012 U.S. Dist. Lexis 149207, 24 (E.D. La. 09/24/12)(unduly lengthy period of almost two years during which earlier federal habeas petition was pending in this Court warrants equitable tolling), adopted, 2012 U.S. Dist. Lexis 149522 (E.D. La. 10/17/12); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed to inform him that his state habeas petition had been denied); Davis v. Johnson, 158 F.3d 806, 808 n. 2 (5th Cir. 1998) (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file his habeas corpus petition beyond the

statute of limitations). As such, the Court will proceed to address the merits of Lowery's claims following its review of the applicable facts and standard of review.

IV.   FACTS[12]

On June 29, 2002, at approximately 7:23 a.m., Corporal Jeffrey Kahrs and Sergeant Gallaher of the Slidell City Police Department responded to a reported disturbance at a Walmart store located in Slidell, Louisiana. Employees of the Walmart store flagged down Sergeant Gallaher and reported an argument between a male and female patron. The officers discovered that the source of the disturbance was an argument between a male patron who identified himself as Eddie Smith, the defendant, and a female who identified herself as Regina Clark. The defendant stated that he had a valid Louisiana driver's license under the name given. However, a search did not indicate the issuance of a Louisiana driver's license under the name given by the defendant. Additional efforts to obtain identification from the defendant were unsuccessful. The female stated that she only knew the defendant as Eddie and did not know his last name.

While performing a pat-down search, the officers visually observed a checkbook in the defendant's right rear pocket. The checks inside the checkbook bore the name Joel Clifton. The

_____

[12]The facts were taken from the Louisiana First Circuit Court of Appeal's opinion, State v. Lowery, 890 So.2d 711 (La. App. 1 Cir. 12/17/04).

defendant informed the officers that the checkbook belonged to a friend who had left it in the defendant's vehicle. Sergeant Gallaher called the telephone number listed on the checks and spoke with a relative of Joel Clifton. The officers further detained the defendant and advised him of his <u>Miranda</u> rights.

Joel Clifton returned the telephone call to Sergeant Gallaher, and arrangements were made for Clifton to come to the scene and identify his property. At this point, the defendant admitted that his name was Edward Lowery and not Eddie Smith. Sergeant Gallaher inspected the outside of the vehicle being used by the subjects. Although the vehicle was a red Pontiac Firebird, an owner's manual for a Ford brand vehicle was inside of the vehicle in plain view. Other items that were in plain view in the vehicle included a stereo faceplate and a stereo owner's manual. The manual and faceplate were of a different brand than the stereo installed in the vehicle.

When Clifton arrived at the scene, he verified that the checkbook found on the defendant was his checkbook that had been reported stolen after his vehicle was burglarized. The female, still known to the officers as Regina Clark, consented to the search of the automobile. A consent to search form was executed. The officers recovered several items that were identified by Clifton as being stolen from his vehicle. Those items included compact discs, a pocketknife, a medicine bag, a grooming kit, and

10

a dart set.   Additional checks belonging to Clifton were also recovered from the vehicle.

Several of the items located in the vehicle were subsequently identified by Melissa Giglio as having been her property and stolen from her vehicle.   Those items included the registration papers for Giglio's vehicle, a cell phone bill, the Panasonic stereo faceplate, and a remote control and manual for the Panasonic stereo.

The officers ultimately determined that there was an outstanding attachment with the St. Tammany Parish Sheriff's Office for the arrest of the defendant.   The defendant and the female were placed under arrest.   A paycheck stub bearing the name Joel M. Clifton and insurance cards for Clifton's vehicle were located in the female's purse when it was searched incident to the arrest.   A Louisiana driver's license bearing the name Regina Clark was also located in the female's purse.   Detective Robert Juge of the St. Tammany Parish Sheriff's Office conducted the follow-up investigation concerning the burglary of the vehicles of Giglio and Clifton.   Detective Juge ultimately determined the identity of the female who formerly identified herself as Regina Clark to be Pamela Alphonso.   During the trial, Alphonso admitted to her presence and participation in the burglary of both vehicles.

The burglary of Giglio's vehicle took place on June 27, 2002, two days prior to the instant arrests.   Giglio was an employee of

the same Walmart in Slidell, and her vehicle was parked in Walmart's parking lot when the burglary took place. Giglio's vehicle was parked on the right side of the Walmart store when the defendant burglarized it. According to Alphonso's trial testimony, the defendant parked next to the vehicle and entered it by sliding the window off track. Alphonso stood at the rear of Giglio's vehicle and monitored the area while the defendant conducted the burglary of the vehicle.

The burglary of Clifton's vehicle took place on the next day, June 28, 2002. The burglary occurred at Davis Landing Boat Launch, located outside of the city limits of Slidell. Clifton began fishing in that area at approximately 6:00 a.m. When he returned to his vehicle, between 11:00 and 11:30 a.m., he noticed that his vehicle had been broken into. The driver's window had been broken with an unknown object. During the trial, Alphonso stated that she had been drinking a strong alcoholic beverage and she had taken valium on the morning of the burglary of Clifton's vehicle. She was, however, able to recall some of the items that were stolen from the vehicle by the defendant. Alphonso also admitted to signing two of the checks that were stolen from Clifton's vehicle. She and the defendant took the checks to two separate banks and successfully cashed them. The defendant was ultimately charged with and convicted of two counts of burglary.

V.  <u>STANDARD OF REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert. denied,</u> 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001);

Hill, 210 F.3d at 485.   The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).   Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

14

VI.   ILLEGAL SEARCH AND SEIZURE

Lowery asserts that the police lacked probable cause to pat him down under the pretense of looking for a weapon and take a checkbook from his back pocket.  The illegally obtained checkbook led to Lowery's arrest when it was discovered that the checkbook had been stolen.[13]

This Court need not address the merits of the above argument due to the mandate enunciated in Stone v. Powell, 428 U.S. 465 (1976).  In Stone, the United States Supreme Court concluded:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

Id. at 481-482 (footnote omitted).

In the present matter, Lowery does not contend that he was deprived of the opportunity to litigate his Fourth Amendment claim fully and fairly in the state court system.  As reflected in the state court record, Lowery's illegal search and seizure claim was properly considered and ultimately rejected.[14]

Thus, Lowery's Fourth Amendment claim is not properly before this Court.  The requirements set forth in Stone have been met.

---

[13]Rec. Doc. No. 3, p. 7.

[14]See St. Rec. Supp. Vol. 2 of 2, pp. 134-161.

VII.  <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Lowery claims that counsel was ineffective because he failed to conduct an adequate pre-trial investigation.  Had he done so, he would have viewed the bank's "surveillance tape" which would have shown that Lowery "was never at any bank[] with anyone cashing checks."[15]  Additionally, had counsel performed a complete investigation he would have discovered a Walmart surveillance camera which videotaped the area where the car burglary allegedly occurred.[16]  Lowery also claims that counsel should have subpoenaed bank and Walmart personnel to testify that Lowery did not cash any checks and did not break into any car.

Lowery claims that counsel was deficient because he failed to utilize in his cross-examination of Ms. Alphonse her statement that she had lied to police and that Lowery "had nothing to do with the crimes."[17]

Lowery claims that he was denied his right to effective assistance of counsel because counsel refused to allow him to testify.  Lowery also attacks counsel's performance during his multiple offender adjudication.  Lowery claims that a 1987 simple

---

[15]Rec. Doc. No. 3, p. 8.

[16]Though not specified, it is presumed that Lowery claims the videotape would have reflected that no such burglary took place or that he was not involved in any burglary.

[17]Rec. Doc. No. 3, p. 9.

burglary conviction "was not usable as a prior offense."[18]   Lowery complains that if either his trial attorney or appellate attorney had challenged the use of the conviction, he would not be a fourth felony offender serving a life sentence.

The issue of ineffective assistance of counsel is a mixed question of law and fact. <u>Woodfox v. Cain</u>, 609 F.3d 774, 789 (5th Cir. 2010); <u>Richards v. Quarterman</u>, 566 F.3d 553, 561 (5th Cir. 2009). Thus, the question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. <u>Strickland</u>, 466 U.S. at 697.[19] The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 687-88.   Second, "[t]he defendant must

---

[18]Rec. Doc. No. 3, p. 11.

[19]The <u>Strickland</u> test is applicable for the purpose of determining the effectiveness of appellate counsel, along with trial counsel. <u>See</u> <u>Busby v. Dretke</u>, 359 F.3d 708, 714 (5th Cir.), <u>cert</u>. <u>denied</u>, 541 U.S. 1087 (2004) (citations omitted) ("The familiar <u>Strickland</u> framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal.").

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this Court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time

of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d 230, 236-37 (5th Cir. 2002), cert. denied, 537 U.S. 1104 (2003); Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 131 S.Ct. 770, 788 (2011) (quotation omitted).  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under §2254(d).  When §2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (quotations and citations omitted).

"[A] court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell v. Cone, 535 U.S. 685, 697 (2002) (citing

19

<u>Strickland</u>, 466 U.S. at 689).  This Court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)).  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  <u>Strickland</u>, 466 U.S. at 689; <u>Moore</u>, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient.  <u>Id</u>.

A.  <u>FAILURE TO CONDUCT AN ADEQUATE PRE-TRIAL INVESTIGATION</u>

Lowery claims that if counsel had conducted an adequate investigation he would have uncovered surveillance tapes from Walmart reflecting that he was not involved in a burglary which took place in the parking lot.  Lowery further asserts that with an adequate investigation, surveillance tapes from the banks where the checks were cashed would have been found which showed that he did not cash the checks.  In this same vein, Lowery charges that if counsel had conducted a proper pre-trial investigation, counsel

would have uncovered favorable witnesses from the banks and from Walmart.

Following a hearing, the trial court issued "Reasons for Judgment" denying the above claims as they were refuted by defense counsel's sworn testimony.

> [Defense] attorney James Talley, recalls making calls to Walmart as to videos and his efforts were unsuccessful. He testified the videos were in a system that would be destroyed or taped over within a matter of a few days. He also testified that he remembers calling the bank involved and that he was unsuccessful at finding any such videos. He thinks they also were either destroyed or taped over. A[s] to bank employees, he was not successful in getting information to subpoena any individual who could testify. As to Walmart employees, he found that nothing the policemen testified to happened where employees were present. He knows that he called both Walmart and the bank investigating this incident.[20]

B.   FAILURE TO ADEQUATELY CROSS-EXAMINATION A WITNESS

Lowery claims that counsel was ineffective in failing to use inconsistencies to impeach Pamela Alphonso's testimony, although he has been less than specific as to what exactly he wanted defense counsel to call to the jury's attention. However, the trial transcript reflects that Alphonso's inconsistences were brought to the jury's attention, thereby impeaching her testimony.

---

[20]St. Rec. Vol. 4 of 7, July 17, 2008 Reasons for Judgment, p. 2. Talley's hearing testimony in this regard is located at St. Rec. Vol. 3 of 3 supplemental, July 15, 2008 hearing, pp. 16-17, 19-20, 25-26.

On direct examination of Alphonso, the State introduced into evidence a letter which Alphonso wrote to Lowery stating that she had lied to authorities.

Q.  Have you received letters since you pled guilty from Eddie Lowery?
A.  Yes.
Q.  And have you sent letters back to Eddie Lowery?
A.  Yes.
Q.  I am going to show you at least one letter, which I am going to mark as . . . State's Exhibit 14, do you recognize that correspondence?
A.  Yes, I do.
Q.  Is that a copy of a letter that you wrote?
A.  Yes.
Q.  Who did you write the letter to?
A.  Eddie.
Q.  When did you write that letter?
A.  It says May 11th.
Q.  May 11 of – –
A.  2003
Q.  2003.  That is a copy of a letter you wrote to him?
A.  Yes.
Q.  In your handwriting?
A.  Yes.
Q.  In that letter, do you refer to Eddie Lowey as your husband?
A.  Yes.
Q.  Is that true?
A.  No.
Q.  In that letter, do you refer to this Judge or the D.A. making you tell lies in order to get a better deal?
A.  I said this in the letter, but it's not true.
Q.  So that's not true either?
A.  No.[21]

On cross-examination, defense counsel confronted Alphonso with exactly what she wrote in the letter – – "I have to tell them a lie or I am going to get twelve years."  After Alphonso admitted

----

[21]St. Rec. Vol. 6 of 7, pp. 336–337.

she had written the statement, counsel impeached her testimony further, engaging in the following colloquy:

> Q.  You are saying that that statement is itself a lie?
> A.  That statement is a lie to Eddie.[22]

C.   <u>FAILURE TO ALLOW LOWERY TO TESTIFY</u>

Lowery asserts that counsel was ineffective by virtue of his refusal to allow Lowery to testify at trial.  However, a review of the testimony taken at Lowery's post-conviction hearing reflects that Lowery's assertion is refuted not only by defense counsel's testimony, but also by his own testimony.

Defense counsel testified:

> I would never tell a client no, you can't testify. As I recall, of course, any client that has got a significant criminal record, as Mr. Lowey did at the time of the trial, is facing cross-examination on that record, and I could well have advised him that it wasn't in his interest . . . but I have never prevented a client from testifying.[23]

As evidenced by the following colloquy, Lowery, on cross-examination, corroborated defense counsel's testimony.

> Q.  So it's your testimony, under oath in front of this Judge, that Mr. Talley told you you should not and could not testify?
> A.  More or less, yes.
> Q.  More or less or is that accurate?
> A.  I mean, it's  - - let me see, go back and think exactly how this went.  Told me it would be best for me not to take the stand.
> Q.  There is a big difference there, isn't there?

_____

[22]St. Rec. Vol. 6 of 7, p. 340.

[23]St. Rec. Vol. 3 of 3 Supplemental, July 15, 2008 hearing, pp. 20-21.

A.   I don't know if there is or not.   I am not an
attorney, Mr. Gardner.
Q.   Did he say it was best for you in your best
interest - -
A.   No.
Q.  - - that you would not take the stand?
A.   No, I understand the way he said it was that <u>I
shouldn't take the stand</u>.  But more or less is what he
was telling me.[24]

D.   <u>FAILURE TO CHALLENGE HIS 1987 SIMPLE BURGLARY CONVICTION</u>

Lowery claims that both trial counsel and appellate counsel
were ineffective for failing to challenge his 1987 simple burglary
conviction, in case number 873131, which was used to enhance his
sentence.  At a July 15, 2008 post-conviction hearing, appointed
counsel argued that Lowery's 1987 simple burglary conviction should
not have been considered to enhance his sentence because Lowery
pleaded guilty to a charge which had been dismissed.[25]

A review of the pertinent bill of information arising from
the Twenty-Fourth Judicial District Court, Parish of Jefferson,
reflects that Lowery was charged with three counts of simple
burglary.  In count one he was charged with committing, on or about
July 8, 1987, simple burglary of an inhabited dwelling, 2100
Pasadena, Apartment #112, belonging to James Wolf, Jr.  In count
two he was charged with committing, on or about June 29, 1987,
simple burglary of an inhabited dwelling, 2100 Pasadena, Apartment

---

[24]St. Rec. Vol. 3 of 3 Supplemental, July 15, 2008 hearing, p. 75
(emphasis added).

[25]St. Rec. Vol. 3 of 3 Supplemental, July 15, 2008 hearing, p. 89.

#311, belonging to Paula Purvis.  In count three, Lowery was charged with committing, on or about August 10, 1987, simple burglary of an inhabited dwelling, 1801 Harding Street, belonging to Earl Cropel.[26]  Counts one and two were dismissed.  However, Lowery's waiver of rights form reflects that he entered a plea of guilty to count two, the June 29, 1987 simple burglary of Paula Purvis's residence.[27]  Because Lowery believed he was pleading guilty to a charge that had been dismissed, counsel argued the conviction arising from the guilty plea was invalid and could not be used as a prior offense in Lowery's multiple offender adjudication.[28]

In an earlier challenge to the validity of the Jefferson Parish simple burglary conviction, Lowery's claim was flatly rejected by the Louisiana Fourth Circuit Court of Appeal because the error was merely clerical and did not impinge on Lowery's rights.

> The documents attached to the writ application show that the Defendant was charged with three counts of simple burglary in the same bill of information.  The commitment states only that the Defendant pleaded guilty to "simple burglary."  The guilty plea form recites the address linked to count two, which had been dismissed, rather than count three, which had not been dismissed.  Nevertheless, <u>it is clear that the Defendant intended to plead guilty to the remaining third count.</u>  <u>The fact that the wrong address was inadvertently</u>

---

[26]St. Rec. Vol. 3 of 3 Supplemental.

[27]St. Rec. Vol. 3 of 3 Supplemental.

[28]St. Rec. Vol. 3 of 3 Supplemental, July 15, 2008 hearing, p. 88.

<u>written on the guilty plea form is not a basis to vacate his guilty plea since it was clearly a clerical error</u>.  Thus, the writ application is hereby denied.[29]

Because Lowery's 1987 simple burglary conviction was not invalid, neither trial counsel nor appellate counsel were deficient in failing to challenge the conviction.  Such a challenge would have been futile.  Counsel cannot be ineffective for failing to pursue a futile course of action.  <u>United States v. Manley</u>, 2011 WL 2259761, *3 (E.D.Pa.2011); <u>see</u> <u>Lindsey v. Cain</u>, 267 Fed. Appx. 374, *1 (5th Cir.2008) (counsel is not ineffective by failing to raise frivolous or futile claims) (citing <u>Johnson v. Cockrell</u>, 306 F.3d 249, 255 (5th Cir.2002)).

VIII.   <u>TRIAL COURT ERRED IN MULTIPLE OFFENDER ADJUDICATION</u>

A.   <u>POSSESSION OF COCAINE CONVICTION</u>

Lowery argues that the trial court violated LSA-R.S. 15:529.1(A) in using his prior possession of cocaine conviction to adjudicate him to be a fourth felony offender.[30]  Lowery asserts that to be adjudicated a fourth felony offender under the statute, his possession of cocaine conviction had to be "punishable by

---

[29]<u>Lowery v. 24th Judicial District Court Division (J)</u>, No. 2008-KH-0412 (La. App. 4 Cir. 05/13/08) (emphasis added); St. Rec. Vol. 2 of 3 Supplemental.

[30]The Court discerned Lowery's argument by reviewing not only his federal habeas petition, but also his "Supplement to Post Conviction" contained in St. Rec. Vol. 3 of 3 Supplemental.

imprisonment for ten years or more." His cocaine conviction, however, was "punishable by less than 10 years."[31]

The fact that the trial court, in adjudicating Lowery to be a fourth felony offender, may have violated state law is of no moment for purposes of attaining federal habeas corpus relief. Habeas corpus review is limited to questions of federal constitutional dimension, and federal courts do not review alleged errors in the application of state law. See Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of or in applying state law); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir.), cert. denied, 524 U.S. 947 (1998); Castillo v. Johnson, 141 F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979 (1998).

Further, as the Louisiana First Circuit explained, it was Lowery's burglary convictions, not his cocaine conviction, which led to his fourth offender adjudication and corresponding life sentence. The state appellate court stated:

> [The] statutory provision states, in pertinent part, "[i]f the fourth felony and two of the prior felonies are felonies ... punishable by imprisonment for twelve years or more ... the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence." Herein, two of the defendant's prior felonies, the simple burglary conviction in case number 271982 and the simple burglary conviction in case number 873131, were punishable for twelve years. The underlying offense, also simple burglary, is punishable for twelve years.

---

[31]Rec. Doc. No. 3, pp. 12 and 13.

> See La. R.S. 14:62.   Thus, upon the fourth felony
> habitual offender adjudication, the defendant was
> subject to a mandatory life sentence without benefit of
> parole, probation, or suspension of sentence and was
> sentenced accordingly.

Lowery, 890 So.2d at 723.

B.   MAY 21, 1997 CONVICTIONS

Lowery argues that the trial court erred in treating his convictions for possession of cocaine and simple burglary, arising from guilty pleas on the same date, May 21, 1997, as two separate convictions for purposes of adjudicating him to be a fourth felony offender.  Lowery asserts that they should have been treated as only one conviction because they "were a package deal."[32]   Once again, however, Lowery cites no law providing that the court's action in treating the two convictions separately was violative of his constitutional rights.  Nor, for that matter, was the court's action violative of state law.  In addressing the instant claim on direct appeal, the Louisiana First Circuit specifically held that "[t]here is no statutory bar to applying the [habitual offender] law in sentencing for more than one conviction obtained on the same date based on unrelated conduct."  Lowery, 890 So.2d at 722.  Thus, the court determined that the trial judge did not err, stating:

---

[32]Rec. Doc. No. 3, p. 12.

28

> [T]he two convictions entered on May 21, 1997 (case
> number 271982 and case number 254640) arose from
> separate and distinct events, occurring on different
> dates, and not as part of a single criminal episode.
> The possession of cocaine offense in case number 254640
> occurred on February 22, 1996.  The simple burglary
> offense in case number 271982 occurred on March 11,
> 1997."

Id.

IX.   <u>MAY 21, 1997 GUILTY PLEAS WERE UNKNOWING AND INVOLUNTARY</u>

Lowery challenges the constitutionality of his May 21, 1997 convictions for simple burglary and possession of cocaine.  Lowery states that his guilty pleas, giving rise to the convictions, were not knowingly and not voluntarily provided.  He pleaded guilty only because he was led to believe that his guilty pleas would result in one conviction.  Lowery states that if he had known the guilty pleas would result in more than one conviction, "he would have never accepted this plea."[33]

The above claim is without merit in light of the Supreme Court's holding in <u>Lackawanna County District Attorney v. Coss</u>, 532 U.S. 394, 396 (2001), wherein the Supreme Court determined that generally, "federal postconviction relief is [not] available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody.  The Court reasoned:

> [O]nce a state conviction is no longer open to direct or
> collateral attack in its own right because the defendant

---

[33]Rec. Doc. No. 3, p. 13.

failed to pursue those remedies while they were
available (or because the defendant did so
unsuccessfully), the conviction may be regarded as
conclusively valid.... If that conviction is later used
to enhance a criminal sentence, the defendant generally
may not challenge the enhanced sentence through a
petition under §2254 on the ground that the prior
conviction was unconstitutionally obtained.

<u>Lackawanna</u>, 532 U.S. at 403-404.[34]

## RECOMMENDATION

For the foregoing reasons, it is hereby recommended that the
application for federal habeas corpus relief filed by petitioner,
Edward Aaron Lowery, Jr., should be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed
findings, conclusions, and recommendation in a magistrate judge's
report and recommendation within 14 days after being served with a
copy shall bar that party, except upon grounds of plain error, from
attacking on appeal the unobjected-to proposed factual findings and
legal conclusions accepted by the district court, provided that the
party has been served with notice that such consequences will

---

[34]There are two exceptions to the above general rule. One exception
is with respect to habeas petitions challenging an enhanced
sentence "on the basis that the prior conviction used to enhance
the sentence was obtained where there was a failure to appoint
counsel in violation of the Sixth Amendment . . . ." <u>Lackawanna</u>,
532 U.S. at 404. The second exception might lie, albeit in a rare
circumstance, where through no fault of his own, there was no
channel of review actually available to petitioner through which he
might have timely challenged his prior conviction. <u>Lackawanna</u>, 532
U.S. at 405. Neither of these exceptions are applicable in the
instant situation.

result from a failure to object.  28 U.S.C. §636(b)(1); <u>Douglass v.</u>
<u>United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en</u>
<u>banc</u>).[35]

New Orleans, Louisiana, this <u>22nd</u> day of <u>May</u>, 2013.


_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[35]<u>Douglass</u> referenced the previously applicable ten-day period for
the filing of objections.  Effective December 1, 2009, 28 U.S.C. §
636(b)(1) was amended to extend that period to fourteen days.